Harrison J. Freebourn v. Commissioner.
Freebourn v. Commissioner
Docket No. 112540.
United States Tax Court
1944 Tax Ct. Memo LEXIS 205; 3 T.C.M. (CCH) 570; T.C.M. (RIA) 44209; June 12, 1944
*205 Held, that petitioner, while Attorney General of the State of Montana, received in 1937 a payment of $2,600 from one Joe K. Hart which was taxable income to petitioner and that he fraudulently omitted from his income tax return for the year 1937 this amount with intent to evade tax. Held, further, that as to other payments which the Commissioner determined in his deficiency notice and affirmatively alleged in his answer were made to petitioner by the same Joe K. Hart in 1937, the preponderance of the evidence favors petitioner and they should not be included in petitioner's income in a recomputation of the deficiency and fraud penalty for the year 1937. Harrison J. Freebourn, pro se. Earl C. Crouter, Esq., and T. M. Mather, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion This proceeding is for a redetermination of a deficiency in income tax for the calendar year 1937 of $960 and of a 50 per cent addition thereto for fraud in the amount of $480. The deficiency is based upon the addition to the income reported by petitioner on his income tax return of amounts totalling $11,000. In explanation of his action the Commissioner stated in his deficiency *206 notice as follows: The determination of your income tax and penalty liability has been made upon the basis of information on file in this office. The 50% penalty shown herein for the taxable year has been asserted in accordance with the provisions of Section 293 (b) of the Revenue Act of 1936. Petitioner by appropriate assignments of error contests the entire determination. The Commissioner in his answer affirmatively alleged as follows: Further answering, the respondent alleges that in addition to the $4,500.00 reported by the petitioner on his return for the year 1937 petitioner received on or about February 3, 1937, $3,400.00; on or about February 11, 1937, $4,000.00; on or about February 20, 1937, $2,600.00 and on or about May 20, 1937, $1,000.00, or a total of $11,000, which was not included in the return filed by the petitioner for the year 1937. That the $11,000.00 so received by the petitioner in 1937 was taxable income and that failure to include said sum in the return filed by the petitioner for 1937 was for the purpose of evading the income tax due and payable on said amount. That by reason of the petitioner's failure to include the sum of $11,000.00 in his return *207 for the year 1937 the return as filed by the petitioner for said year was false and fraudulent. Petitioner filed a reply to these affirmative allegations in which he denied them all. Findings of Fact Harrison J. Freebourn, the petitioner, is a lawyer by profession residing in Butte, Montana, and practing in that city. In 1937 he was Attorney General of the State of Montana, and had his office at Helena, Montana. Petitioner filed an individual income tax return for the calendar year 1937 with the Collector of Internal Revenue at Helena, Montana, on March 15, 1938. In this return he reported an income of $4,500 from his law business on cases handled prior to becoming attorney general and paid a tax thereon of $62 after allowances of an earned income credit of $450 and a personal exemption of $2,500. He claimed no other deductions. During 1937 he also received a salary of $4,500 as attorney general, which he did not report on the ground that at that time compensation of state officers was considered exempt from Federal taxation. No question is in issue as to any of these items. Joe K. Hart is an individual residing in Everett, Washington. His present business is farming and *208 operating a machine shop. During the early part of 1937 and for about seven or eight years prior thereto he operated in the States of Washington and Montana a coin operated phonograph and slot machine business under the name of Hart Novelty Company. Prior thereto Hart had been convicted of a felony in violating the National Prohibition Law and had served time in a penal institution. Ronald W. Pepple is an individual who is now in the Signal Corps of the United States Army. During 1936 and the early part of 1937 he was employed by Hart on a commission basis to look after some coin operated phonographs and a few slot machines in Great Falls, Butte and Anaconda. Pepple and Hart's wife are cousins. Petitioner was admitted to the bar in June 1918. He was County Attorney of Silver Bow County in 1929 and 1930. He was out of office in 1931 and 1932, but was again reelected as county attorney and served for 1933, 1934, 1935 and 1936. He was elected as attorney general in 1936. William McCrone is an individual who owns a half interest in a tavern at Butte. He was a constable during 1926, 1927, 1928 and 1929 in one of the four Justice Courts in Butte and when petitioner became county attorney *209 in 1929 he became acquainted with McCrone. Petitioner did not know McCrone in a social way and up to 1932 they only talked to one another in the office, in the justice court, or on the street. During the years 1933 to 1936, inclusive, petitioner did not know McCrone's official position, if any, but did see McCrone occasionally as they both resided in Butte. During the first five months of 1937 McCrone saw petitioner on several occasions. In the latter part of January 1937, Pepple talked with McCrone about getting in the slot machine business in Montana in a rather large way. The operation of slot machines was a lucrative business if operated unmolested in fertile territory, but was in violation of the criminal laws of the State of Montana in 1937. McCrone told Pepple he knew petitioner and thought he could see him and arrange an interview with him. On or about January 27, 1937, McCrone and Pepple made a trip to Helena. On January 27, 1937, Pepple sent the following telegram to Hart at Everett, Washington: TEN BIG COCONUTS CINCHES DEAL STOP BILL HANDLES ALL NEGOTIATIONS STOP YOU MUST BE IN BUTTE FRIDAY STOP COLD CASH OF TEN BIG ONES ONLY WAY TO TALK FINE POINTS STOP WILL PHONE YOU *210 NINE OCLOCK TONITE. January 27, 1937 was on a Wednesday. By "TEN BIG COCONUTS" Pepple meant $10,000. The reference to "Bill" meant McCrone. On or about February 2, 1937, Hart arrived in Butte from Everett and brought with him $800 in cash and a draft issued February 1, 1937, by The First National Bank of Everett payable to the order of Hart for $6,600. Hart handed the draft to Pepple unendorsed who kept it until very late that night. Sometime during that day McCrone had talked with petitioner (apparently over the telephone) and had told him that he wanted to see him that night and petitioner had said "OK, come over." About nine-thirty or ten o'clock that night Pepple and McCrone drove from Butte to Helena, a distance of about 70 miles, and went to petitioner's apartment. McCrone want in and saw petitioner and asked him if he could bring Hart over the following day and petitioner said that he could. McCrone also told petitioner at this meeting that Hart was a slot machine operator in the State of Washington and that McCrone could get a job to work for Hart and receive $1,000 a month. Pepple and McCrone then returned to Butte and McCrone saw Hart at his hotel and told Hart that it *211 was all right for him to go to Helena the next day. Pepple then returned the unendorsed draft for $6,600 to Hart. On the following day on or about February 3, 1937, Hart cashed a Western Union money order for $2,800 at the Metals Bank & Trust Co. of Butte, Montana, and received the money in denominations of five, ten and twenty dollar bills. Hart also tried to cash the draft for $6,600 but the bank refused on account of its size. Hart then took $600 of the $800 cash he had brought with him and placed it with the $2,800, thus making $3,400 in one roll. Hart, McCrone and Pepple then drove to Helena and went straight to petitioner's office in the state capitol building. Upon arrival Pepple remained in the car and Hart and McCrone went inside. McCrone told a girl just outside the petitioner's private office that he would like to see petitioner and when his turn came the girl told McCrone and Hart to come in. McCrone introduced Hart to petitioner as "the man that would give me the job if we could get going in the State." The parties who sat in on this conference give different versions of what was said in the conference but it is agreed among all three that no money passed. Hart testified *212 that following the conference McCrone either had the $3,400 in cash in his pocket or that he gave it to him, he does not remember which, and that McCrone and petitioner walked on ahead of him. He said that he did not see McCrone hand petitioner any money but that McCrone nevel returned the $3,400 to him. After the meeting with petitioner, Hart, McCrone and Pepple returned to Butte and Hart returned to Everett taking the $6,600 draft with him. On February 6, 1937, Hart endorsed and cashed the draft for $6,600 at Paying Window 12 of The First National Bank of Everett, and placed the cash in his safety deposit box. On the same day Hart wired a Western Union money order of $4,000 from Everett, Washington, to Pepple at Butte, Montana. The money order was not issued at Butte until on Monday, February 8, 1937. Pepple cashed it at the Metals Bank & Trust Co. at Butte on February 9, 1937, and placed the money which was in rather small bills in his safety deposit box at this same bank. Pepple rented a safety deposit box at the Metals Bank & Trust Co. from March 11, 1936, to August 26, 1938. Between January 12, 1937, and October 1, 1937, inclusive. Pepple made access to the box 24 different *213 times. The first ten entrances were on dates as follows: January 12
1:45 P.M.
February 9
10:59 A.M.
February 10
10:09 A.M.
February 16
1:47 P.M.
February 18
12:17 P.M.
February 20
11:02 A.M.
April 7
1:14 P.M.
April 15
11:10 A.M.
April 19
11:19 A.M.
July 3
1:06 P.M.
On February 10, 1937, Pepple took the $4,000 of cash out of his safety deposit box, after which he and McCrone drove to Helena and arrived at the capitol building late in the afternoon. Pepple then gave the $4,000 to McCrone and they parted company. Pepple never did see this money after that. He does not know what became of it after he gave it to McCrone. On February 17, 1937, Hart wired a Western Union money order of $2,600 from Everett, Washington, to Pepple at Butte, Montana. The money order was issued at Butte on the same date and cashed by Pepple the following day at the Metals Bank & Trust Co. at Butte. Hart came over to Butte and Pepple gave the money to Hart. Hart then told McCrone that he had the rest of the money for petitioner and that he would like to go with McCrone to see petitioner. McCrone replied that his mother was ill and that he could not go. McCrone called petitioner on the telephone *214 and made an appointment for Hart to see petitioner. Thereafter Pepple drove Hart to Helena. Hart went to petitioner's office and told the office girl that he would like to see petitioner, and after waiting around for an hour or so Hart was admitted to petitioner's office. During this conversation Hart paid to petitioner the $2,600 in cash which he had brought with him from Butte. On May 18, 1937, A. R. Kinney, who at that time was Hart's foreman in the shop at Everett, wired a Western Union money order of $1,000 from Everett, Washington, to Hart at Butte, Montana. The money order was issued at Butte on the following day and cashed by Hart on May 19, 1937, at the Metals Bank & Trust Co. at Butte. Hart gave this $1,000 to McCrone with instructions to give it to petitioner. He does not know that McCrone paid the $1,000 to petitioner. The $1,000 was never returned to Hart. At some time thereafter during 1937 Hart sold out to one Weelan in Butte for $7,500 and quit the state. The sale covered about 110 slot machines, more or less, all on location tables. Petitioner was indicted in the Federal District Court in Montana on the criminal charge of having evaded the payment of income tax *215 upon the $11,000 here in question. The case was tried before a jury in August 1940, and petitioner was acquitted. Petitioner on or about February 20, 1937, received from Joe K. Hart $2,600 in cash which was taxable income to petitioner. Petitioner fraudulently omitted this amount from his income tax return in 1937 with intent to evade tax. Part of the deficiency in income tax determined by the Commissioner against petitioner for the year 1937 is due to fraud with intent to evade tax. Petitioner did not receive the $3,400 which the Commissioner determined he received on or about February 3, 1937, and he did not receive the $4,000 which the Commissioner determined he received on or about February 11, 1937, and he did not receive the $1,000 which the Commissioner determined he received on or about May 20, 1937. Opinion BLACK, Judge: This proceeding presents two issues: (1) Whether the respondent erred in determining that petitioner received $11,000 additional taxable income for the year 1937 which he did not report, and (2) whether the respondent erred in determining that the deficiency or any part thereof was due to fraud with intent to evade tax. The burden of proof as to the first *216 issue is upon petitioner and the burden of proof as to the second issue is upon the respondent. . In his answer the respondent affirmatively alleged "that in addition to the $4,500.00 reported by the petitioner on his return for the year 1937 petitioner received on or about February 3, 1937, $3,400.00; on or about February 11, 1937, $4,000.00; on or about February 20, 1937, $2,600.00 and on or about May 20, 1937, $1,000.00, or a total of $11,000.00, which was not included in the return filed by the petitioner for the year 1937." The deficiency of $960 results entirely from the respondent's determination that petitioner received the said $11,000 as additional taxable income. Petitioner took the stand and testified both on direct examination and again on cross-examination that he did not receive the four separate amounts totaling $11,000 or any part thereof and rested his case. The respondent then, to sustain his affirmative allegations of fraud, introduced the testimony of five witnesses and considerable documentary evidence. Only two of the witnesses, Joe K. Hart and Ronald Pepple testified with reference to the payments *217 which respondent alleges Hart made to petitioner in pursuance of his plan to get protection in the operation of slot machines in the State of Montana in violation of law. The other three witnesses were called to identify telegrams, telegraph money orders, cashing of money orders by the bank in Butte, telephone calls and things of that sort. The upshot of Hart's and Pepple's testimony is that all in all Hart was out $11,000 in money, got dissatisfied, sold out his slot machines and repaired to his home in Everett, Washington, where he has since engaged in other business. We have little reason to doubt Hart's testimony that as a result of his slot machine venture in the State of Montana, Hart was out of pocket the $11,000 which he claims. The documentary evidence and Pepple's testimony pretty well corroborate his testimony to that effect. But the testimony does not establish that any direct payments were made by Hart to petitioner except the $2,600 which Hart says he paid to petitioner in his office at the Capitol Building in Helena on or about February 20, 1937. Unless we entirely disbelieve Hart's story we must find that on or about that time Hart paid to petitioner the $2,600 which *218 he claims for the purpose of getting protection in the illegal operation of slot machines. We are not inclined to disbelieve Hart's story of this payment, although petitioner testified that he did not receive any such payment. "Fraud is a fact to be proven by clear and convincing evidence", , affirmed . In the instant case we have the clear statement of Hart that he did make such a payment to petitioner on or about February 20, 1937, and we are convinced by Hart's testimony and other surrounding facts and circumstances that he did make such a payment. Therefore, as to the $2,600 payment we think the evidence is "clear and convincing". We have, therefore, found such to be a fact in our findings of fact and have further found that petitioner fraudulently omitted this $2,600 from his income tax return for the year 1937 with intent to evade the tax. As to the remainder of the $11,000 which the Commissioner affirmatively alleges that Hart paid to Freebourn in 1937 aggregating $8,400 we do not think the Commissioner has sustained his burden of proof. The evidence of Hart and *219 Pepple is to the effect that these other payments were made to McCrone with instructions to give them to petitioner. McCrone was present at the hearing having been subpoenaed as a witness by the Commissioner but he was not called to testify by the Commissioner. When the Commissioner had rested his case petitioner called McCrone as a witness in his own behalf in rebuttal to respondent's case and McCrone testified that he did not receive these payments and that he did not pay them over to petitioner. Petitioner denied receiving any such payments. Under these circumstances we are unwilling to say that the evidence is "clear and convincing" to establish fraud as to these particular items contained in respondent's affirmative allegations. Moreover we think we must hold that a preponderance of the evidence justifies a finding that these other amounts were not received by petitioner from McCrone and therefore should not be included in petitioner's income for 1937 in a recomputation of the deficiency under Rule 50. As we have already stated, the Commissioner did include these several amounts of $3,400, $4,000 and $1,000, aggregating $8,400 in petitioner's income for 1937 in his determination *220 of the deficiency. That determination by the Commissioner is presumed to be correct and the burden is on petitioner to show that it is incorrect. However, that burden of proof is discharged when the preponderance of all the evidence shows that petitioner did not receive such amounts. This preponderance of the evidence does not have to go to the extent that it is "clear and convincing" as in the case of respondent's burden to establish fraud. While we must say that the evidence leaves us in considerable doubt concerning these three payments aggregating $8,400 which the Commissioner has determined that petitioner received in 1937, we hold that the preponderance of the evidence favors petitioner as to them. We think the instant case is distinguishable from , affd. . In that case the Commissioner showed the receipt of large sums of money by the taxpayer which he used for his own purposes. The Commissioner was unable to show the source of some of these funds. The taxpayer refused to explain where they came from, except to say they were trust funds, the nature of which was confidential. *221 The Board of Tax Appeals disbelieved his explanation and held the taxpayer taxable on the entire amount and liable to a fraud penalty. In the instant case as we have already stated there is no direct testimony that petitioner received any of the sums aggregating $11,000 except the $2,600 which we have already discussed and held in favor of respondent. As to the remainder, aggregating $8,400, petitioner denies receiving it, McCrone denies paying it to him and the Commissioner has been unable to fortify his case by circumstances such as that petitioner on or about the dates in question deposited to his account in some bank or trust company currency corresponding to the alleged payments. In view of this state of the evidence as to these three items aggregating $8,400 we hold in favor of petitioner. Respondent's determination as to them is not sustained. Decision will be entered under Rule 50.